Erik Vande Stouwe
Courtney Witten
1244 Speer Boulevard, Suite 515
Denver, CO 80204
vandestouwe.erik.r@dol.gov
ph. (202) 693-5618
witten.courtney@dol.gov
ph. (303) 844-1387

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| MARTIN J. WALSH<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>　　Plaintiff,<br><br>v.<br><br>SPECIAL K RANCH, INC.,<br><br>　　Defendant. | Case Number:<br><br>CV-22-59-BLG-SPW-TJC |

### COMPLAINT

Plaintiff, Martin J. Walsh, Secretary of Labor for the United States Department of Labor, brings this action pursuant to sections 16 and 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 216–17, 29 U.S.C. § 201, *et seq*. (the "FLSA"), to enjoin Defendant from violating sections 6, 14(c) and 15(a) of the FLSA, 29 U.S.C. §§ 206(a), 214(c), and 215(a)(2), and section 511 of the

1

Rehabilitation Act, 29 U.S.C. § 794g, and to recover from Defendant minimum wage compensation, as well as liquidated damages, due Defendant's employees named in Exhibit A for the time periods referenced herein.

## PARTIES

1. Martin J. Walsh, the Secretary of Labor for the United States Department of Labor (the "Secretary"), is vested with authority to file suit to restrain violations of the FLSA and is the proper plaintiff in this action.

2. Special K Ranch, Inc. ("Special K"), is a Montana non-profit corporation and owns and operates a residential and working ranch facility for individuals with intellectual and developmental disabilities.

3. Special K is an "employer" within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to sections 16 and 17 of the FLSA, 29 U.S.C. §§ 216–17, and 28 U.S.C. §§ 1331 (federal question) and 1345 (United States Plaintiff).

5. Venue is proper in the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1391 insofar as Special K is domiciled in Montana, its principal office is located in Columbus, Montana, and the events or omissions giving rise to the claims herein occurred at the Special K Ranch, which is owned

and operated by Special K in Montana.

## FLSA COVERAGE

6. At all relevant times, Special K has been an enterprise within the meaning of section 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that Special K (a) was engaged in commerce or in the production of goods for commerce; (b) had employees engaged in commerce or in the production of goods for commerce, or in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (c) had an annual gross volume of sales made or business done in excess of $500,000.

7. At all relevant times, Special K also has been a covered institution under section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), in that it is primarily engaged in the care of the individuals with disabilities who reside at Special K Ranch.

## STATUTORY BACKGROUND

8. Section 6 of the FLSA requires that covered employers pay employees at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C).

9. Section 14(c) of the FLSA authorizes the Secretary to issue "special certificates" to employers to pay workers wage rates less than $7.25 per hour when "necessary to prevent curtailment of opportunities for employment" for individuals "whose earning or productive capacity is impaired by . . . physical or mental

deficiency . . . ." 29 U.S.C. § 214(c).

10. The process for issuing such certificates is governed by section 14(c) and its implementing regulations, codified in 29 C.F.R. Part 525.

11. Section 15 of the FLSA prohibits covered employers from violating sections 6 and 14 of the Act, among others. 29 U.S.C. § 215(a)(2).

12. In addition to these requirements, section 511 of the Rehabilitation Act, as added by the Workforce Innovation and Opportunity Act ("WIOA"), requires that all workers who are paid the subminimum wage pursuant to section 14(c) be provided with both (A) career counseling and information and referrals ("CCIR") and (B) information about peer mentoring, self-advocacy, and self-determination training opportunities available in their geographical area ("training opportunity information"). 29 U.S.C. § 794g(c)(1)(A)–(B). An employer who fails to timely provide these services and information may not continue to employ an individual at subminimum wage. *Id.*

13. Employers must ensure that employees paid below the minimum wage are provided with CCIR and training opportunity information once every six months for the first year of their employment and annually thereafter for the duration of such employment. 29 U.S.C. § 794g(c)(2).

14. The CCIR must be provided by a Designated State Unit, which in Montana is the Vocational Rehabilitation and Blind Services of the Montana

Department of Health and Human Services. 29 U.S.C. § 794g(c)(1)(A).

15. The training opportunity information must be provided by the employer. 29 U.S.C. § 794g(c)(1)(B).

## FACTUAL BACKGROUND

16. In July and August of 2017, Special K's subminimum wage employees signed forms waiving or refusing CCIR from the Montana Vocational Rehabilitation and Blind Services, and Special K did not offer or provide CCIR to any of these employees.

17. On or about July 29, 2017, Special K sought to renew its special certificate to pay its employees subminimum wages by submitting to the Department of Labor's Wage and Hour Division ("WHD") an Application for Authority to Employ Workers with Disabilities at Subminimum Wages.

18. Section 16 of the Application was titled "Requirements under the Workforce Innovation and Opportunity Act (WIOA)" and references the instructions for "further information about WIOA requirements that are effective July 22, 2016."

19. The instructions provide, in relevant part, that "Beginning July 22, 2016, employers also have an affirmative duty to comply with the additional conditions for payment of subminimum wages pursuant to the Rehabilitation Act as amended by the Workforce Innovation and Opportunity Act (WIOA)."

20. On the Application, Special K checked the box for "Yes" under the question: "Has the employer reviewed and verified documentation that counseling and referrals have been provided to each worker paid at a subminimum wage, regardless of age, and each has been informed of available training opportunities as required by WIOA?"

21. On August 18, 2017, the WHD provided Special K with a Certificate Authorizing Special Minimum Wage Rates under section 14(c) of the FLSA, valid from September 1, 2017 to August 31, 2019.

22. On or about August 28, 2019, Special K submitted to the WHD another Application for Authority to Employ Workers with Disabilities at Subminimum Wages.

23. As it did in 2017, Special K checked the box for "Yes" under the question: "Has the employer reviewed and verified documentation that counseling and referrals have been provided to each worker paid at a subminimum wage, regardless of age, and each has been informed of available training opportunities as required by WIOA?"

24. Again, the WHD granted Special K a Certificate Authorizing Special Minimum Wage Rates under section 14(c) of the FLSA, this one valid from September 1, 2019 to August 31, 2021.

25. In December 2020, the WHD initiated an investigation into Special K's

compliance with section 511 of the Rehabilitation Act and its pay practices for the period of December 31, 2018 through December 30, 2020 ("Investigation Period").

### FIRST CAUSE OF ACTION
### (Paying Subminimum Wages without Providing Annual Section 511 Career Counseling and Information and Referrals and Training Opportunity Information)

26.     Section 511 of the Rehabilitation Act, as amended by WIOA, prohibits any entity from employing an individual at a subminimum wage unless, among other conditions, a designated state unit provides the individual with career counseling, information and referrals that are consistent with section 511(a)(2)(B)(ii) and which are "delivered in a manner that facilitates independent decision-making and informed choice, as the individual makes decisions regarding employment and career advancement[.]" 29 U.S.C. § 794g(c)(1)(A).

27.     Section 511 also prohibits any entity from employing an individual at a subminimum wage unless, among other conditions, the employer informed the individual about self-advocacy, self-determination, and peer mentoring training opportunities available in the individual's geographic area. 29 U.S.C. § 794g(c)(1)(B).

28.     CCIR and training opportunity information must be provided every 6 months for the first year of an individual's employment at subminimum wage and annually thereafter for the duration of such employment. 29 U.S.C. § 794g(c)(2).

29.     In section 16 of its 2017 Application for Authority to Employ

Workers with Disabilities at Subminimum Wages, Special K misrepresented that it had complied with WIOA requirements and "reviewed and verified documentation that counseling and referrals have been provided to each worker paid at a subminimum wage, regardless of age, and that each has been informed of available training opportunities as required by WIOA[.]"

30. On its 2019 Application for Authority to Employ Workers with Disabilities at Subminimum Wages, Special K again made the same misrepresentation in section 16.

31. In fact, Special K did not provide CCIR or training opportunity information to the employees for whom it sought and received authorization to pay subminimum wages. As a result, Special K was not permitted to employ those employees at a subminimum wage and was required to pay minimum wage if it chose to continue their employment.

32. Nevertheless, Special K paid 35 employees wages less than $7.25 per hour during the Investigation Period and, on information and belief, continued to do so thereafter.[1]

33. Special K's failure to pay at least minimum wage while it was not in compliance with section 511 of the Rehabilitation Act violated sections 6, 14(c) and 15(a)(2) of the FLSA.

---

[1] In 2020, these employees were paid between $1.17 and $2.55 per hour.

34. Special K was aware of its obligations under WIOA and the FLSA and willfully violated both statutes.

35. As a result of the violations alleged herein, unpaid minimum wage compensation and liquidated damages in an amount equal to the unpaid minimum wages as authorized by section 16(c) of the FLSA, 29 U.S.C. § 216(c), is owing to Special K's employees identified on Exhibit A for at least the Investigation Period.

36. Inasmuch as the violations continued or may be continuing beyond the Investigation Period, violations may be accruing for certain of these employees and for employees who may not be presently known to the Secretary, in amounts presently unknown to the Secretary, from December 31, 2020, to the date of judgment.[2]

## RELIEF SOUGHT

WHEREFORE, cause having been shown, the Secretary respectfully prays for judgment against Special K providing for the following relief:

A. An injunction pursuant to section 17 of the FLSA permanently

---

[2] Special K recently provided information to the WHD indicating that it may have provided CCIR and training opportunity information to its employees in April and May 2021. However, Special K has refused to agree to toll the statute of limitations while the WHD further evaluates whether Special K achieved compliance with section 511 of the Rehabilitation Act. In the event it is determined through further inquiry or discovery that Special K came into compliance in April and/or May 2021 as it claims, then its obligation to pay minimum wages may end on the date of compliance for each individual employee.

restraining Special K, its officers, agents, employees, and those persons in active concert or participation with Special K, from violating sections 6, 14(c), and 15(a)(2) of the FLSA and section 511 of the Rehabilitation Act;

  B. For an order pursuant to section 16(c) of the FLSA requiring Special K to pay the Secretary a sum equal to the unpaid minimum wage compensation due Special K's employees for the period from December 31, 2018, through December 30, 2020 and liquidated damages equal in amount to the unpaid wages found due; and such additional amounts as may be found by this Court for the period from December 31, 2020, until the date of judgment; and for equal additional amounts as liquidated damages;

  C. In the event liquidated damages are not awarded, an order pursuant to section 17 enjoining and restraining Special K from withholding payment of unpaid minimum wage compensation due to its employees and pre-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

  D. A monetary award to Plaintiff for the costs of this action; and

  E. Such other and further relief as this Court deems just and appropriate.

        Respectfully submitted,

        Seema Nanda
        Solicitor of Labor

John Rainwater
Regional Solicitor

Lydia Tzagoloff
Associate Regional Solicitor

Tyler McLeod
Counsel for the Wage and Hour Division

/s/ Courtney Witten
Trial Attorney

/s/ Erik Vande Stouwe
Trial Attorney

Counsel for Plaintiff

U.S. DEPARTMENT OF LABOR
Office of the Solicitor